We move to the second case this morning, Golin v. Neptune Management. Good morning, Your Honor. Mr. Golin. If you may please record, I'm Jeffrey Golin. I'm a plaintiff appellant in this case. And I wanted to thank you for the opportunity to plead oral argument. I hope I can adjust. I may not be as prepared as you are, since I know you've read the briefs, which I've... Well, you wrote them, so you're in better shape than we are. Pardon me? You wrote them. Yes, I did. So that's my preparation. So the issues in this case are fairly simple. I'm sorry, I left my notes back. Just a moment. The reason that we're here at this point is we have a diversity issue. And the question is, who are the real parties of interest? We haven't reached the fact-finding state. We have several material issues of dispute. For example, the competence of Milton Golin to revoke his power of attorney with James. We haven't reached that yet. So I'm prepared to discuss it, but that is a fact-finding issue that should be handled by Judge Hart. We were about to get into that when we realized that diversity was being destroyed by my misnomer of one of the names of the parties. I hope this will be the last appearance that I'll make on Golin versus Neptune, because the real party of interest that we discovered was Service Corporation International, the parent corporation of Neptune Management. And Judge Hart made a jump to a conclusion that we were asserting derivative liability of the parent corporation. We weren't doing that. He said the case, it was not proper to bring Service Corporation International into the case because according to the facts as he saw them, we were simply trying to assert vicarious liability of the parent corporation, when in fact the subsidiary had almost nothing to do with this case from day two. Neptune Corporation, once they were contacted, did not call California or any of their corporate headquarters. They called Service Corporation International. They somehow knew that was the proper thing to do in a case like this, and they did it. And from that point on, we received messages from the chief counsel of Service Corporation International, Steve Metzger, demanding that we go get a court order, not him, but us, that we go get a court order requiring them to authorize the autopsy, which James opposed. And so it became very clear that we had thought we were dealing with Neptune, and in fact we were dealing all the time with Service Corporation International, the parent corporation, and so we weren't really invoking derivative liability of the parent corporation. Judge Hart misunderstood that, and he quoted a case, Langford v. Rizzo Chevrolet, which requires that we pierce the corporate veil. We're not really trying to do that because what we're really doing is using another doctrine that is really applicable, which is direct involvement of the parent corporation. So we're not asserting derivative liability. We're asserting direct liability. I think, Mr. Golan, I think that whole issue is kind of a red herring here because Neptune is the entity that holds your father's remains, as I understand it. Is that right? Yes. Neptune deferred the matter to its parent corporation, which was the party. But the parent corporation doesn't have possession of the body. Neptune has possession of the body. No, but the parent corporation made a determination that it would not allow the subsidiary. It directly involved itself with the subsidiary. Right. That really doesn't matter here because that's what the law requires when the possessor of the body is caught in the middle of a fight between family members about what should happen to the remains, and that's what's going on here. And so Neptune and SCI, the parent or majority owner of Neptune, is a nominal party. Right. They're a nominal party. This is a fight between you and your brother. That's right. You're correct. I'm glad you brought that up because they're simply a placeholder. They're serving a ministerial function. They can't be let out of the case because we have to have a personal jurisdiction of them to make a binding order. But they can't release the body for either cremation or an autopsy without a court order because of this ongoing dispute among the family members, you and your brother. But that just raises a different jurisdictional hurdle for you, and that is the amount in controversy in this case. Right. We don't have a plausible controversy that exceeds $75,000. And so you don't have. . . Well, that was dealt with in our first brief, as a matter of fact, which it's well recognized that in a case where there's a declaratory and injunctive relief, the amount of controversy is considered to be the value of the order. And in this case, it's the value of an order which determines whether there was a wrongful death. And so it's well established. I cited Supreme Court cases. It's well entrenched. So there was never any dispute. Judge Hart found for us on that issue. So we didn't have an amount in controversy issue. That was not raised. Well, no, we still have to consider it because it's a jurisdictional prerequisite. And so we have an obligation to assure that the amount in controversy exceeds $75,000. And here it does not because the only value that you're asserting here is the value of some future litigation. If it turns out there was some sort of wrongdoing committed upon your father by your brother or others. And we don't value a declaratory judgment in the present action by reference to what some future tort case may or may not be worth. I think we thoroughly briefed that. I don't agree with you. And I think if you could go back and look at the first briefing where Judge Hart asked for a brief on this issue, it's really a matter where you have to show there's no possibility. The defendant has to show that there's no possibility of not reaching the amount of controversy. It has to be a very high bar. So... No, this suit has no monetary value at all. What? This suit for declaratory relief has no monetary value at all. And it cannot be... A monetary value can't be ascribed to it on some speculation about what a future wrongful death action might be worth. That's just purely speculative. The burden is on the defendant to show that it would be impossible to reach the amount of controversy. And that was not done. And nobody disputed that. As I said, I wasn't prepared for that. I did brief you on that in my appellate brief. But we did have an early brief on this where we went into all the authorities about this. And it was absolutely clear, and we did not have any dispute on that. So I'm sorry, but I wasn't expecting that because it was all pretty much resolved. And it's... I don't know what to do. I think I could probably direct you to this first brief. I think we have... It would be a mistake to claim that we didn't have an amount of controversy here. I mean, this is very well established for declaratory and injunctive relief. It's the value of the information. We're basically trying to establish that there was a wrongful death. And so it doesn't have to be proven. Sorry, I disagree with that. I'm kind of surprised by this. Do you have any other questions? I think this whole thing with the Langston versus the direct involvement issue, I think that's what really came up first. The direct liability, direct vicarious liability, not the direct vicarious liability. I'm sorry. I'm a little flustered now. When the parent corporation directly involves itself in the activity of the subsidiary and gives directions to the subsidiary, then it becomes liable on its own right. I have a curious question. How long has the body been in this refrigeration unit at the... Well, Milton died on March 23rd of 2016, and it's been... Over a year then. Yes, that's right. It's been too long. Is that costing money? It's not costing anybody money that I know of. I haven't seen a bill. Okay. I'm just curious. That's all. Thank you. Thank you, counsel. Your time has expired. Pardon me? Your time has expired. Okay. Thank you. Thank you. The case will be taken under advisement, and we move to the third case.